IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| VICTORIA E., <br><br> Plaintiff, <br><br> vs. <br><br> FRANK BISIGNANO, Commissioner of Social Security, <br><br> Defendant. | **8:25CV236** <br><br><br> **MEMORANDUM AND ORDER ON JUDICIAL REVIEW OF COMMISSIONER'S DENIAL OF BENEFITS** |

Plaintiff Victoria E.[1] seeks judicial review of the denial of her application for disability insurance benefits by defendant Commissioner of the Social Security Administration. Filing 1 at 1. Victoria E. has moved for an order reversing the Commissioner's decision. Filing 18. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying disability benefits. Filing 21. For the following reasons, the Court grants the Commissioner's motion to affirm and denies Victoria E.'s motion to reverse.

## I.   INTRODUCTION

### A.   Procedural Background

Victoria E. applied for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq., on January 5, 2022. Filing 9-5 at 7 (AR 150). Victoria E. alleged an onset disability date of July 4, 2021. Filing 9-5 at 8 (AR 151). Victoria E.'s claim was denied initially on August 5, 2022. Filing 9-4 at 7 (AR 75). Her claim was denied on reconsideration on June 23, 2023. Filing 9-4 at 18 (AR 86).

Victoria E. filed a written request for a hearing on July 7, 2023, pursuant to 20 C.F.R. 404.929 et seq. Filing 9-4 at 22 (AR 90). The administrative law judge (ALJ) held a telephone

---

[1] The Court will refer to Plaintiff by first name and last initial to protect her privacy.

hearing to review the denial of Victoria E.'s application on November 7, 2023. Filing 9-5 at 33 (AR 32). On March 11, 2024, the ALJ issued an unfavorable decision on Victoria E.'s case. Filing 9-2 at 27 (AR 26). Victoria E. requested a review of the ALJ's decision, and on February 13, 2025, the Appeals Council issued an order denying her request for review. Filing 9-2 at 4 (AR 3). Victoria E. filed this action seeking judicial review and reversal of the ALJ's decision to deny her disability benefits, or in the alternative, to vacate and remand this matter for further proceedings, and to award attorney's fees. Filing 1 at 2.

### B. Factual Background

#### 1. The Claimant and Her Alleged Disabilities

Victoria E. was sixty-four years old at the time of the alleged disability onset date, July 4, 2021, classifying her as a person of advanced age (age 55 or older) pursuant to 20 C.F.R. § 404.1563 and 20 C.F.R. § 416.963. Filing 9-5 at 23 (AR 145). Victoria E. is classified as having a high school education, which places her in the fourth—and highest—educational ability as listed under 20 C.F.R. § 404.1564 and 20 C.F.R. § 416.964. Filing 9-6 at 18 (AR 183). Victoria E. lived alone at the time of her alleged disability onset date. Filing 9-6 at 41 (AR 206). While the ALJ found some evidence Victoria E. engaged in work activity after the application date, he determined Victoria E. did not engage in substantial gainful employment. Filing 9-2 at 20 (AR 19). Victoria E. alleged in her disability report the conditions that limit her ability to work as hypertension and unknown arthritis in both knees. Filing 9-6 at 3 (AR 168).

Victoria E. provides two general bases in support of her motion for an order to reverse the Commissioner's decision. First, Victoria E. argues the ALJ failed to identify and inquire into conflicts between the VE's testimony and the DOT after Victoria E. submitted a post-hearing opinion letter from Ms. Paula F. Santagati, MA. Filing 18 at 11-14. Second, she contends the ALJ failed to consider adequately the impact of Victoria E's obesity on her osteoarthritis. Filing 18 at

15-18. The Court will provide a focused statement of the medical records and other evidence relevant to Victoria E.'s challenges to the ALJ's decision.

    2.    *Medical Records and Evidence*

    a.  Treating Physicians' Opinions of Victoria E.'s Symptoms

On June 6, 2021, Victoria E. injured her left knee while attempting to kick a ball at work. Filing 9-7 at 20 (AR 280). She visited Dr. Eric M. Samuelson at OrthoNebraska on June 23, 2021. Filing 9-7 at 20 (AR 280). His physical examination and review of the left knee MRI and x-rays revealed a mild effusion, tenderness, complex degenerative tearing of the body and posterior horn of the medical meniscus, moderate to severe medial compartment osteoarthritis, mucoid degeneration of the ACL, and a ganglion cyst measuring 8mm, and a 6mm intra-articular loose body posterior to the PCL insertion which is encapsulated. Filing 9-7 at 20-21 (AR 280-81). Dr. Samuelson discussed formal physical therapy and a knee brace to address the injury. Filing 9-7 at 21 (AR 81).

Victoria E. attended thirty physical therapy sessions between June 29, 2021, and November 9, 2021. *See* Filing 9-7 at 53-121 (AR 313-381). Throughout, she visited Dr. Samuelson approximately once per month to evaluate progress. *See* Filing 9-7 at 18, 24, 22 (AR 278, 282, 284).

By July 28, Dr. Samuelson noted "significant improvement with appropriate conservative treatment measures." Filing 9-7 at 19 (AR 279). He recommended continuing physical therapy to work up strength, stamina, and endurance, but allowed Victoria E. to "return to work full duty without restrictions." Filing 9-7 at 19 (AR 279).

On September 8, Victoria E. reported to Dr. Samuelson a pain of 7 out of 10. Filing 9-7 at 24 (AR 284). Dr. Samuelson ordered an intra-articular injection, which Victoria E. received and tolerated well. Filing 9-7 at 25 (AR 285).

By October 22, Victoria E. reported that the injection provided her "significant relief." She continued to take ibuprofen and reported being able to "perform any of her activities of daily living, a little bit easier" and rated her pain as 2–3 on scale of 0/10. Filing 9-7 at 33 (AR 293). At this point, she noted to Dr. Samuelson that she recently resigned from her position, "not necessarily due to the knee, but due to the emotional stress or load of what she deals with on a daily basis." Filing 9-7 at 33 (AR 293). Dr. Samuelson reduced visits to only an as-needed basis as she had achieved "maximum medical improvement." Filing 9-7 at 34 (AR 294).

On November 9, 2021, after her thirtieth physical therapy appointment, Victoria E. was discharged from physical therapy. Filing 9-7 at 53 (AR 313). At her discharge appointment, she reported that left-knee soreness had almost completely gone away on all but exceptionally busy days. Filing 9-7 at 53 (AR 313). At that time, she was able to do laundry, grocery shop, and clean her house without significant limitation. Filing 9-7 at 53 (AR 313).

November 12, 2021, Victoria E. established care with Dr. Shana M. Peper, M.D. Filing 9-7 at 150 (AR 410). Victoria E. visited Dr. Peper in January, March, and April of 2022. Filing 9-7 at 154, 148, 166 (AR 414, 408, 426). During this time, Dr. Peper recommended physical therapy, medication and low impact exercise for Victoria's osteoarthritis. Filing 9-7 at 151, 55 (AR 411, 415). Victoria E. declined further physical therapy. Filing 9-7 at 151 (AR 411). Dr. Peper discussed and recommended corticosteroid injection since this provided "fairly good relief." Filing 9-7 at 265 (AR 525). Dr. Peper noted that Victoria E. had developed a cough, recommended scans, and adjusted medication. Filing 9-7 at 147, 155 (AR 409, 415).

On January 12, 2023, Victoria E. visited the pulmonology office of Dr. Gary Koenig, M.D., for the cough. Filing 9-7 at 204 (AR 464). Dr. Koenig noted that she had a negative x-ray in fall 2022, a restriction on lung volumes, minimal postnasal drip, no use of accessory muscles on lung

4

exam, symmetric expansion in the chest, and bilateral breath sounds without a wheeze. Filing 9-7 at 204 (AR 464). For Victoria E.'s cough and rhinitis, Dr. Koenig recommended continued medication. Filing 9-7 at 204 (AR 464).

On April 13, 2023, Victoria E. returned to Dr. Samuelson, denying new injuries but rating her pain as 10 on a scale of 0-10. Filing 9-8 at 78 (AR 648). Dr. Samuelson's physical exam revealed Victoria E.'s range of motion to be from near full extension to approximately 115° of flexion on the left and 120° of flexion on the right, mild knee tenderness, and negative straight leg raising. Filing 9-8 at 79 (AR 649). She received another intra-articular injection. Filing 9-8 at 79 (AR 649). In a medical opinion dated October 4, 2023, Dr. Samuelson indicated that Victoria E. could lift 50 pounds occasionally and would not be limited by environmental factors such as frequent pulmonary irritants. Filing 9-8 at 95, 97 (AR 665, 667). On October 10, 2023, Victoria E. followed up with Dr. Samuelson, noting that the April injection was helpful for approximately three months. Filing 9-8 at 117 (AR 687). Dr. Samuelson noted that Victoria E. "ambulates with a cane for longer distance." Filing 9-8 at 117 (AR 687).

   b.   Self and Lay Assessments of Victoria E.'s Functionality

Victoria E. completed a function report on April 16, 2022, for use by the Social Security Administration in considering her application for disability benefits. In her report, Victoria E. claimed her ability to work is limited due to arthritis, hypertension, stress, poor vision, and vertigo. Filing 9-6 at 33 (AR 198). Specifically, she notes that she has problems dressing, using the restroom, cooking, and sleeping. Filing 9-6 at 34 (AR 199). She states that she is able to wash dishes, vacuum floors, dust furniture, sweep floors, clean counter tops, and clean the toilet. Filing 9-6 at 36 (AR 201). She states she needs help taking out the trash, deep cleaning, changing bedding, bringing in groceries and moving laundry up and down stairs. Filing 9-6 at 36 (AR 201). Squatting

5

or bending the knee too far causes sharp pain and standing or walking for 20-30 minutes causes aching and swelling in her knees. Filing 9-6 at 37 (AR 202).

On April 24, 2022, Victoria E.'s cousin, Lynn M., completed a third-party function report on behalf of Victoria E. regarding limitations to her abilities. Lynn M. reported that she can walk for about 20 minutes of slow walking before needing to stop and rest. Filing 9-6 at 46 (AR 211). Lynn M. also reported that Victoria E. prepares meals 2–3 times per day but "doesn't cook anymore due to standing[.]" Filing 9-6 at 43 (AR 208). Victoria E. does some cleaning but "mopping and brooming is hard" and she leaves her apartment only as necessary. Filing 9-6 at 43-44 (AR 208-09).

### c. Evaluations of Victoria E.'s Medical History by State Consultants

On August 4, 2022, state consultant Dr. Steven G. Higgins, M.D., found that Victoria E.'s knee condition would reasonably be expected to produce pain, but that "the functionally limiting effects and persistence of symptoms are not objectively found to be as severe as alleged." Filing 9-3 at 6 (AR 57). Dr. Higgins found that Victoria E. could occasionally lift 20 pounds and frequently lift 10 pounds, that she should never climb ropes, ladders, or scaffolds, but that she could occasionally kneel, crouch, crawl or climb stairs. Filing 9-3 at 7 (AR 58). Victoria E. could stand, sit, or walk for about 6 hours in an 8-hour workday. Filing 9-3 at 7 (AR 58). Dr. Higgins noted that while Victoria E. self-reported that she uses a cane when she goes out by herself, this is not evidenced at the consultative exam. Filing 9-3 at 4 (AR 55). Finally, Dr. Higgins observed that she should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. Filing 9-3 at 8 (AR 59). In Dr. Higgins' opinion, Victoria E. could perform the job of youth counselor as actually performed. Filing 9-3 at 9 (AR 60).

On May 25, 2023, state consultant Dr. Joanell K. Wheeler, M.D., found that Victoria E.'s impairment would reasonably be expected to produce the symptoms alleged, but the "PFT does not show an obstructive lung disease." Filing 9-3 at 14 (AR 65). Dr. Wheeler found that Victoria E. could occasionally lift 20 pounds and frequently lift 10 pounds, that she should never climb ropes, ladders, or scaffolds, but that she could occasionally kneel, crouch, crawl or climb stairs. Filing 9-3 at 15 (AR 66). Victoria E. could stand, sit, or walk for about 6 hours in an 8-hour workday, according to Dr. Wheeler. Filing 9-3 at 15 (AR 66). Finally, considering Victoria E.'s history of restrictive lung disease, Dr. Wheeler found that Victoria E. should avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation, etc. Filing 9-3 at 16 (AR 67). In Dr. Wheeler's opinion, Victoria E. could perform the job of youth counselor as actually performed. Filing 9-3 at 17 (AR 68).

d.  Victoria E.'s Personal Testimony at the ALJ Hearing

On November 7, 2023, the ALJ held a telephone hearing to review Victoria E.'s case. Filing 9-2 at 35 (AR 34). Victoria E. testified that until August 2022, she worked customer service at a telemarketing company but quit because her vertigo made her very sick. Filing 9-2 at 40 (AR 39). She testified that her youth service job ended because of the arthritis and not because of the stress she was under. Filing 9-2 at 41-42 (AR 40-41). She was then treating the arthritis with steroid shots from Dr. Samuelson and ibuprofen three to four times per day. Filing 9-2 at 42 (AR 41). She also testified that her blood pressure medicine caused her to chronically cough nearly 24 hours a day, enough to make her vomit sometimes. Filing 9-2 at 44 (AR 43). Regarding walking and standing, Victoria E. testified she can stand still for ten minutes or walk a half a block before needing to sit down. Filing 9-2 at 45 (AR 44). She testified that she has a prescription for her brace but not for her cane. Filing 9-2 at 47 (AR 46).

7

e.  Paula F. Santagati's Post-Hearing Opinion Letter

After the hearing concluded, but before the ALJ made his decision, Victoria E. provided the ALJ with an opinion letter dated December 20, 2023, by Vocational Rehabilitation Counselor, Paula F. Santagati, M.A. *See* Filing 9-6 at 90-96 (AR 255-261). Ms. Santagati challenged the testimony provided by the Vocational Expert that a hypothetical individual with Victoria E.'s RFC could perform the jobs of telephone solicitor, youth coordinator, and clinical home coordinator. Filing 9-6 at 90 (AR 255). Ms. Santagati's opinion highlighted that a work environment which involves working in proximity to other employees or customers exposes chemically sensitive individuals to a wide variety of pulmonary irritants like personal and hygiene products. Filing 9-6 at 91 (AR 256). According to Ms. Santagati, even isolated workspaces must be cleaned and will often expose workers to cleaning chemicals, dusts, and odors. Filing 9-6 at 91 (AR 256). As a result, Ms. Santagati's opinion is "that workers with any limitations on exposure to fumes, odors, dusts and gases regardless of frequency are precluded from virtually all unaccommodated employment in today's workforce including but not limited to given jobs." Filing 9-6 at 90 (AR 255).

3.    *The ALJ's Impairment Findings*

Under 20 C.F.R. § 416.920(b), an ALJ will conduct a five-step analysis to determine whether a claimant is disabled. *See Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)). The ALJ will consider the following during that analysis:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Grindley*, 9 F.4th at 628 (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (internal citation omitted)). The claimant generally bears the burden of proving he or she is disabled at the first four steps of the process, while the ALJ bears the burden of proving a claimant is not disabled at step five. 20 C.F.R. §§ 416.912(a)-(b), 416.960(c)(2). If the ALJ finds the claimant is not disabled at steps one, two, four, or five, or finds the claimant is disabled at steps three or five, the ALJ will end the analysis. 20 C.F.R. § 404.1520(a).

At the first step of the five-step sequential process, an ALJ will find a claimant is not disabled if the claimant is working and that work is considered substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity is work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful work activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). In this case, the ALJ determined Victoria E. had not engaged in substantial gainful activity. Filing 9-2 at 3 (AR 19). While the ALJ recognized that Victoria E. had worked since the application date, nothing in the record indicated the work met minimum threshold for substantial gainful activity. Filing 9-2 at 3 (AR 19). The ALJ proceeded to the next step of analysis.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii). A claimant's impairment or combination of impairments is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If an ALJ finds the claimant's medically determinable impairment or combination of impairments is not severe, the claimant is not disabled. 20 C.F.R. § 416.920(c). In this case, the ALJ determined Victoria E.'s osteoarthritis of the left knee was severe. Filing 9-2 at 3 (AR 19). The ALJ determined

9

Victoria E.'s vertigo, hypertension, obesity, anxiety, and depression were non-severe impairments. Filing 9-2 at 4 (AR 20). Her medication controlled the symptoms when taken as prescribed. Filing 9-2 at 4 (AR 20). The ALJ also considered Victoria's obesity and potential impact on coexisting impairments. Filing 9-2 at 21 (AR 20). Victoria E's obesity was non-severe. Filing 9-2 at 21 (AR 20). The ALJ found no evidence of obesity's "quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning during the period of review." Filing 9-2 at 21 (AR 20).

At the third step of the process, the ALJ will ascertain whether the claimant's impairment or combination of impairments is of a severity to meet the listed criteria in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment does meet the listed criteria the ALJ will find the claimant is disabled; if, however, the ALJ determines the claimant's impairment does not meet the listed criteria then the ALJ proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

4.    *The ALJ's RFC Findings*

At step four of the five-step analysis, the ALJ will first determine the claimant's residual functional capacity (RFC), then assess the claimant's RFC in consideration of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is her ability to do physical and mental work despite limitations from her impairments. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)); *see also* 20 C.F.R. § 404.1512(a). The ALJ determines a claimant's RFC by using all relevant evidence in the claimant's case record, "including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger*, 390 F.3d at 591; *see also* 20 C.F.R. § 404.1545(a). The ALJ concluded the following pertaining to Victoria E.'s RFC determination:

10

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except no climbing ramps, ladders, or scaffolds. The claimant is able to occasionally climb ramps and stairs; balance, kneel, stoop, crawl, crouch or crawl. The claimant can have no concentrated exposure to extreme cold temperatures, vibration or, [sic] pulmonary irritants such as gases or chemicals or hazards such as unprotected heights.

Filing 9-2 at 22 (AR 21).

Following the ALJ's determination of the claimant's RFC, the claimant's RFC will be compared to their past relevant work. 20 C.F.R. § 404.1520(f); *see also* 20 C.F.R. § 404.1560(b). Past relevant work is substantial gainful activity claimant performed within the past fifteen years or fifteen years prior to the date disability must be established, and that substantial gainful activity lasted long enough for the claimant to learn to do the work. 20 C.F.R. § 416.960(b)(1); *see generally* 20 C.F.R § 416.965(a). If the claimant has the RFC to do her past relevant work the ALJ will conclude the claimant is not disabled and the analysis ends, but if the claimant is unable to do any past relevant work or does not have any past relevant work the ALJ proceeds to the fifth and final step. 20 C.F.R. § 404.1520(f).

Here, the ALJ determined the claimant was capable of performing past relevant work of "Telephone Solicitor," sedentary, and so performed (DOT 299.357-014); "Youth Counselor," light, and so performed (DOT 195.164-010); and "Clinical Home Coordinator," sedentary, yet performed at Light (DOT 195.107-022).[2] Filing 9-2 at 27 (AR 26). At the hearing, vocational expert Stephen Schill testified that a hypothetical individual of Victoria E.'s age, education, and RFC could perform the positions of telephone solicitor, youth counselor, and home coordinator as performed. Filing 9-2 at 50 (AR 49). The ALJ found the VE's "testimony was consistent with

---

[2] The Social Security Administration primarily relies on the Dictionary of Occupational Titles (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. How to Find an Occupational Title and Code, Information Technology Associates (Apr. 11, 2020), https://occupationalinfo.org/front_580.html.

information found in the Dictionary of Occupational Titles" and that it did "not appear to conflict with information found in the DOT[.]" Filing 9-2 at 27 (AR 26). Therefore, the ALJ did not proceed to the fifth step of analysis. He found that Victoria E. was not disabled.

## II.  LEGAL ANALYSIS

### A.  Standard of Review

A Social Security claimant must proceed through four levels of administrative review before the claimant may obtain judicial review in federal district court, including an Appeals Council review of the ALJ's decision. *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019); *see also* 42 U.S.C. § 405(g). Once at the federal district court level, the court will "decide whether the [ALJ]'s findings 'are supported by substantial evidence on the record as a whole.'" *Bowers v. Kijakazi*, 40 F.4th 872, 874 (8th Cir. 2022) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). "Substantial evidence [on the record as a whole] is less than a preponderance of the evidence" and is "'such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion.'" *Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (quoting *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014) (internal citations and quotations omitted)). "Substantial evidence in the record as a whole" is a more rigorous standard than simply "substantial evidence" since the former standard requires consideration of evidence that supports or detracts from the ALJ's determination, whereas the latter does not. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1358 (8th Cir. 2022) (quoting *Koch v. Kijakazi*, 4 F.4th 656, 663 (8th Cir. 2021) (cleaned up and internal quotations omitted) ("Substantial evidence in the record as a whole" is a more "rigorous" standard than simply "substantial evidence," which is "evidence that a reasonable mind might accept as adequate to support the Commissioner's conclusion."). The district court "will not reverse the [ALJ]'s decision merely because [the court] find[s] that 'substantial evidence exists in the record that would have supported a contrary outcome.'" *Austin v. Kijakazi*, 52 F.4th 723, 728

12

(8th Cir. 2022) (citing *Schmitt*, 27 F.4th at 1358) (internal quotations omitted)). Rather, "'[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Dols v. Saul*, 931 F.3d 741, 744 (8th Cir. 2019) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Additionally, the district court must determine whether the ALJ's decision "complies with the relevant legal standards." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (internal citations omitted)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Id.* (quoting *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (where the ALJ committed legal error by not posing a hypothetical question to the vocational expert) (omission in original)). "In conducting our limited and deferential review of the final agency determination under the substantial-evidence standard, we must view the record in the light most favorable to that determination." *Dols*, 931 F.3d at 748 (quoting *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (per curiam)).

## B. Discussion

Victoria E. asserts two grounds for reversing and remanding the ALJ's decision. First, Victoria E. argues the ALJ erred by "failing to inquire regarding conflicts [between the VE evidence and the DOT]." Filing 18 at 14. Second, Victoria E. contends the ALJ erred by "ignor[ing] the impact of Plaintiff's obesity in combination with her osteoarthritis" and "provid[ing] no logical explanation for ignoring disabling evidence." Filing 18 at 15.

13

     1.     *The ALJ's Acceptance of the VE's Testimony Was Supported by Substantial Evidence*

        a.  No Conflict Existed Between the DOT and the VE's Testimony at Hearing

Victoria E. argues the ALJ erred by failing to inquire into inconsistencies between the VE's testimony and the DOT as required by SSR 00-4p. Filing 18 at 13. Specifically, Victoria E. contends the DOT conflicts with the VE's testimony that she could perform the jobs of telephone solicitor, youth counselor, and home coordinator with an RFC which restricted any concentrated exposure to pulmonary irritants. Filing 18 at 12.

SSR 00-4p provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

The Eighth Circuit Court of Appeals explained that the ALJ has complied with SSR 00-04p "when an ALJ has posed a hypothetical that accurately reflects his RFC finding, questioned the VE about any apparent inconsistencies with the relevant DOT job descriptions, and explained his decision to credit the VE's testimony[.]" *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014).

Here, no conflict between the ALJ and the VE exists. At hearing, the ALJ asked the VE whether a hypothetical claimant who "[s]hould have no concentrated exposure to extreme cold temperatures, vibration, pulmonary irritants such as gases or chemicals or hazards such as unprotected heights" could perform any of the jobs in Victoria E.'s work history. Filing 9-2 at 50. AR 49. The VE answered that the hypothetical individual could perform the positions of telephone

solicitor, youth counselor, and home coordinator. Filing 9-2 at 50. AR 49. The DOT describes these three positions as follows:

### 299.357-014 TELEPHONE SOLICITOR

Solicits orders for merchandise or services over telephone: Calls prospective customers to explain type of service or merchandise offered. Quotes prices and tries to persuade customer to buy, using prepared sales talk. Records names, addresses, purchases, and reactions of prospects solicited. Refers orders to other workers for filling. Keys data from order card into computer, using keyboard. May develop lists of prospects from city and telephone directories. May type report on sales activities. May contact DRIVER, SALES ROUTE (retail trade; wholesale tr.) 292.353-010 to arrange delivery of merchandise.

### 195.164-010 GROUP WORKER [Youth Counselor]

Organizes and leads groups, such as senior citizens, children, and street gangs, in activities that meet interests of individual members: Develops recreational, physical education, and cultural programs for various age groups. Demonstrates and instructs participants in activities, such as active sports, group dances and games, arts, crafts, and dramatics. Organizes current-events discussion groups, conducts consumer problem surveys, and performs similar activities to stimulate interest in civic responsibility. Promotes group work concept of enabling members to develop their own program activities through encouragement and leadership of membership discussions. Consults with other community resources regarding specific individuals, and makes referral when indicated. Keeps records. May recruit, train, and supervise paid staff and volunteers. Employed in settings, such as community center, neighborhood or settlement house, hospital, institution for children or aged, youth centers, and housing projects.

### 195.107-022 SOCIAL GROUP WORKER [Home Coordinator]

Develops program content, organizes, and leads activities planned to enhance social development of individual members and accomplishment of group goals: Interviews individual members to assess social and emotional capabilities and plans group composition in relation to personal and social compatibility of members. Selects program appropriate to particular group goals, level of development, needs, capacities, and interests of group members. Involves members in planning and assuming responsibility for activities. Helps members through group experience to develop attitudes and social skills for improved family relations and community responsibility. May secure supplementary information, such as medical records and school reports. May work in collaboration with other professional disciplines. Refers members, when indicated, to community resources and other organizations. Employed in agencies, such as community center, settlement house, youth serving organization, institution for children or aged, hospital, or penal institution. Usually required to have skills acquired through degree program at school of social work.

15

Notably, neither the DOT descriptions nor the VE's testimony indicates workers in these jobs involve exposure to any pulmonary irritants—let alone *concentrated* exposure. Accordingly, no inconsistencies appear between the VE's testimony and these DOT descriptions. The ALJ explained that he accepted the VE's testimony "as it does not appear to conflict with the information found in the DOT (Social Security Ruling 00-4p)." Filing 9-2 at 27. AR 26. The ALJ satisfied the criteria set out in *Welsh* by posing an accurate hypothetical, inquiring about apparent inconsistencies, and explaining the decision to credit the VE. 765 F.3d at 930. Therefore, the Court concludes that the ALJ has complied with SSR 00–4p. His findings are supported by substantial evidence as no conflict exists.

b. The Third-Party Opinion Does Not Create a Conflict Between the VE's Testimony and the DOT

Victoria E. argues that the post-hearing opinion letter by Ms. Paula F. Santagati, M.A., demonstrates a conflict between the VE testimony and the DOT. Filing 18 at 12. However, this is a misreading of SSR 00-4p. Ms. Santagati's opinion may very well conflict with the DOT descriptions regarding pulmonary irritants. However, a conflict between her opinion and the DOT does not create a conflict between the VE's testimony and the DOT. The relevant portion of SSR 00-4p does not apply to conflicts between third-party opinions and the DOT; rather, it states, "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict[.]" SSR 00-4p. Again, there was no conflict between the VE's testimony and the DOT. Therefore, the requirement to "elicit a reasonable explanation" did not apply here. Any failure to inquire into potential conflicts would be harmless. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("In sum, the ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the Dictionary of Occupational Titles was harmless, since no such conflict appears to exist.").

Further, the fact that the ALJ did not explicitly reference this piece of evidence from Ms. Santagati is irrelevant because "an ALJ is not required to discuss every piece of evidence submitted." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). The ALJ's determination is supported by substantial evidence on the record as a whole. The ALJ cited the opinions of Dr. Wheeler and Dr. Higgins that Victoria E. should avoid moderate or concentrated exposure to pulmonary irritants. Filing 9-2 at 25 (AR 24). In contrast, Ms. Santagati alone opined that workers like Victoria E. "are precluded from virtually all unaccommodated employment in today's workforce including but not limited to [telephone solicitor, youth counselor, and clinical home coordinator]." The record as a whole does not support this opinion. Indeed, the Plaintiff's own 47-point "Summary of Relevant Medical Records" contains only two brief mentions of pulmonary irritation concerns—"vertigo, and persistent cough"—undoubtedly because the lion's share of her medical treatment history has been devoted to osteoarthritis or other musculoskeletal issues. Filing 18 at 6-7. The Court hesitates to find substantial evidence lacking where a single third-party letter expresses—against the weight of the whole medical record—the extreme position that a claimant is "precluded from virtually all unaccommodated employment."

### 2.    The ALJ Adequately Considered Plaintiff's Osteoarthritis and Obesity

Victoria E. next argues that the ALJ failed to consider properly the impact of her obesity on the severity of her osteoarthritis condition and to account for such impact in the RFC. Filing 18 at 15-18. Specifically, she argues the ALJ ignored disabling evidence that she can stand for no longer than ten minutes and is unable to walk without a cane and a knee brace. Filing 18 at 15. The Court disagrees.

In the Eighth Circuit, "when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) (quoting *Heino v. Astrue*, 578 F. 3d 873, 881 (8th Cir. 2009)). In *Wright*,

the ALJ considered the record as a whole and explicitly stated that he "considered the combined effects of the claimant's obesity with the claimant's other impairments when determining that he retains the ability to perform a range of sedentary work within the limitations identified." 789 F.3d at 855. The Court of Appeals upheld this determination.

Here, the ALJ acted similarly. After reviewing the record as a whole, he explicitly stated he "considered the potential impact of obesity in causing or contributing to co-existing impairments as required by Social Security Ruling SSR 19-2p." Filing 9-2 at 21 (AR 20). Given the evidence in the medical record and the similarity to the ALJ's action in *Wright*, the Court cannot find that the ALJ here lacked substantial evidence to support the denial of benefits to Victoria E.

The ALJ's findings are supported by substantial evidence on the record as a whole. Victoria E's cane is not prescribed. Filing 9-2 at 47 (AR 46). Dr. Higgins found functionally limiting effects and persistence of symptoms were not as severe as alleged. Filing 9-3 at 6 (AR 57). He and Dr. Wheeler found that Victoria E. could stand and/or walk for about 6 hours in an 8-hour workday. Filing 9-3 at 7, 15 (AR 58, 66). Dr. Samuelson found the same. Filing 9-8 at 95 (AR 665). The conservative treatment provided significant relief and allowed her "perform any of her activities of daily living, a little bit easier" at a pain level of 2-3 out of 10. Filing 9-7 at 33 (AR 293). At discharge from physical therapy, Victoria reported that left-knee soreness had almost completely gone away on all but exceptionally busy days. Filing 9-7 at 53 (AR 313). At that time, she was able to do laundry, grocery shop, and clean her house without significant limitation. Filing 9-7 at 53 (AR 313). Dr. Samuelson's latest physical exams revealed Victoria E.'s range of motion to be from near full extension to approximately 115° of flexion on the left and 120° of flexion on the right, mild knee tenderness, and negative straight leg raising. Filing 9-8 at 79 (AR 649). Dr. Peper

noted the knee injections provided "fairly good relief." Filing 9-7 at 265 (AR 525). Dr. Samuelson noted that the injection was helpful for approximately three months. Filing 9-8 at 117 (AR 687). Therefore, there is substantial evidence to support the ALJ's finding that the plaintiff could stand for longer than 10 minutes. Thus, the ALJ properly considered the impact of Victoria E.'s obesity on the severity of her osteoarthritis.

### III. CONCLUSION

The Court concludes that substantial evidence supports the ALJ's decision that Victoria E. is not disabled. Accordingly,

IT IS ORDERED that

1.      Victoria E.'s Motion for an Order Reversing the Commissioner's Decision, Filing 18, is denied;

2.      Bisignano's Motion to Affirm the Commissioner's Decision, Filing 21, is granted;

3.      The Commissioner's decision is affirmed;

4.      The Court will enter a separate judgment.

Dated this 20th day of March, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge

19